```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF GEORGIA
                      COLUMBUS DIVISION
```

BOBBY WATERS,                          *

    Plaintiff,                        *

vs.                                    *
                                          CASE NO: 4:06-CV-129 (CDL)
                                      *

MEL MILLER, individually and
d/b/a FAST ACTION AUTO TRANSPORT;*
PROGRESSIVE CASUALTY INSURANCE
COMPANY; and PROGRESSIVE EXPRESS *
INSURANCE COMPANY
                                      *

    Defendants.
                                      *

## O R D E R

This case arises from an automobile accident caused when Plaintiff Bobby Waters's vehicle was rear-ended by the tractor-trailer owned, operated, and driven by Defendant Mel Miller ("Miller") and allegedly insured by Defendants Progressive Casualty Insurance Company and Progressive Express Insurance Company (collectively, "Progressive"). Presently pending before the Court is Progressive's Motion for Final Summary Judgment (Doc. 41). For the following reasons, Progressive's motion is granted.

### BACKGROUND

**I.  Factual Background**

At the time of the events giving rise to this litigation, Miller, d/b/a Fast Action Auto Transport, owned a tractor-trailer combination which he used to haul automobiles. Miller secured a commercial vehicle insurance policy on his tractor-trailer through

1

Progressive (the "Policy"). The Policy had a liability limit of one million dollars. Coverage under the Policy began on September 11, 2004 and ended on September 11, 2005. The Policy covered the tractor-trailer for damage occurring within a 300-mile radius of Keystone Heights, Florida, the "garaging zip code." (*See* Ex. A to Progressive's Statement of Undisputed Material Facts at 2-3.)

Miller admits that he was frequently late making the premium payments due under the Policy. (Miller Dep. 156:8-9, May 16, 2007.) Prior to September 11, 2005, Progressive sent Miller five separate cancellation notices informing him that his failure to make payment would cause his insurance to lapse. Miller failed to pay the premium by September 11, 2005, and the Policy expired. On November 29, 2005, Miller was hauling autos in his tractor-trailer from Florida to Georgia when he rear-ended Plaintiff Bobby Waters in Columbus, Georgia. As a result of the accident, Plaintiff suffered severe injuries requiring surgical treatment. Progressive denied coverage of Miller's claim, explaining that the Policy had expired on September 11, 2005 due to non-payment of premiums.

## II. Procedural Background

Plaintiff filed his original Complaint in Superior Court of Muscogee County. Plaintiff sought a declaratory judgment against Progressive declaring that the Policy provided coverage for the accident in question. After Defendants removed the case to this Court, the parties filed cross-motions for summary judgment. At issue was whether Progressive complied with Florida law requiring

insurance coverage to remain in effect—even after cancellation of a policy—until the insurer informs the Florida Department of Highway Safety and Motor Vehicles of the policy's cancellation. In an Order dated July 31, 2007, the Court denied Plaintiff's motion and granted Progressive's motion. The Court first determined that it was undisputed that the Policy was issued by Defendant Progressive Express, and thus Progressive Casualty was entitled to summary judgment. The Court then determined that under Florida law, the Policy provided no coverage for the accident and granted Progressive Express's motion for summary judgment.

Plaintiff filed a motion for reconsideration, urging the Court to reexamine Plaintiff's contention that federal law provided Plaintiff with a basis for coverage. The Court granted Plaintiff's motion in part and directed Defendants to file a motion for summary judgment as to Plaintiff's federal law claim, which they have now done.[1]

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing that there is no genuine

---

[1] The Court's Order vacated only "that part of its Order that granted summary judgment to [the Progressive] Defendants on all of Plaintiff's claims." Order Granting Defs.' Mot. for Recons. 2, Aug. 22, 2007. Thus, the only claim that will be adjudicated by this Order is Plaintiff's federal law claim against Defendant Progressive Express.

3

issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). This burden can be met by showing that the non-moving party will be unable to "establish the existence of an element essential to [the non-moving party's] case, and on which [the non-moving party] will bear the burden of proof at trial." *Id.* at 322.

Once the moving party has met its burden, the burden shifts to the non-moving party to show that there *is* a genuine issue of material fact. *Id.* at 324. A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine issue if the evidence would allow a reasonable jury to find for the non-moving party. *Id.* In other words, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In determining if the parties have met their respective burdens, the Court resolves "all reasonable doubts about the facts in favor of the non-movant, and draw[s] all justifiable inferences in his . . . favor." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (internal quotation marks and citation omitted). Additionally, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau*, 835

F.2d 855, 856 (11th Cir. 1988) (internal quotation marks and citation omitted).

DISCUSSION

**I.   Motion for Summary Judgment**

The Motor Carrier Act of 1980, 49 U.S.C. § 10101 *et seq.*, and the regulations promulgated thereunder require certain interstate motor carriers to obtain an insurance policy containing "a special endorsement . . . providing that the insurer will pay within policy limits any judgment recovered against the insured motor carrier for liability resulting from the carrier's negligence[.]"  *Ill. Cent. R.R. Co. v. Dupont*, 326 F.3d 665, 666 (5th Cir. 2003).  This endorsement is commonly known as an "MCS-90" or "ICC" endorsement.

A.   <u>The MCS-90 Endorsement</u>

"It is well-established that the primary purpose of the MCS-90 is to assure that injured members of the public are able to obtain judgment from negligent authorized interstate carriers." *John Deere Ins. Co. v. Nueva*, 229 F.3d 853, 857 (9th Cir. 2000); *see also* 49 C.F.R. § 387.1 ("The purpose of these regulations is . . . to assure that motor carriers maintain an appropriate level of financial responsibility for motor vehicles operated on public highways."). In order to accomplish this purpose, the endorsement "makes the insurer liable to third parties for any liability resulting from the negligent use of any motor vehicle by the insured, even if the vehicle is not covered under the insurance policy." *T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc.*, 242 F.3d 667, 671 (5th Cir. 2001).

5

The MCS-90 endorsement applies "regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere." 49 C.F.R. § 387.15 ill. I. Cancellation of the endorsement is only effective upon "the company or the insured . . . giving (1) thirty-five (35) days notice in writing to the other party . . . and (2) if the insured is subject to FMCSA's [the Federal Motor Carrier Safety Administration's] jurisdiction, by providing thirty (30) days notice to the FMCSA." 49 C.F.R. § 387.15, ill. I. In sum, the MCS-90 endorsement is "in effect, suretyship by the insurance carrier to protect the public—a safety net . . . . [I]t simply covers the public when other coverage is lacking." *T.H.E. Ins. Co.* 242 F.3d at 672 (internal quotation marks and citation omitted).

The insurer is not without recourse when it is obligated to provide coverage under an MCS-90 endorsement. When the insurer is required to make a payment it would not have made but for operation of the endorsement, the insurer may recover such payments from the insured. 49 C.F.R. § 387.15 ill. I. ("The insured agrees to reimburse the company for any payment made by the company . . . for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in [the MCS-90] endorsement.").

Plaintiff contends that because Progressive failed to notify the FMCSA that the Policy was cancelled, the MCS-90 endorsement remains

6

in effect and provides coverage for the accident in question.  *See* 49 C.F.R. § 387.15 ("Endorsements to policies of insurance . . . will remain in effect continuously until terminated . . . ."). It appears that the Policy does not physically contain an MCS-90 endorsement. (*See* Ex. A to Progressive's Statement of Undisputed Material Facts at 20, "Index of Endorsements".)  Plaintiff contends, however, that the Court should incorporate the endorsement into the Policy as a matter of law.  For the following reasons, the Court declines to do so.

> B. <u>Whether MCS-90 Endorsement Should be Incorporated into Policy as a Matter of Law</u>

The precise issue before the Court appears to be undecided in the Eleventh Circuit.  Some courts from other jurisdictions have found that the MCS-90 endorsement becomes part of an insurance policy as a matter of law even when the endorsement is not physically attached to the policy itself.  *See, e.g., Hagans v. Glens Falls Ins. Co.*, 465 F.2d 1249, 1252 (10th Cir. 1972) (assuming that because "all parties proceed on the premise that the policy . . . contains" the required endorsement, the endorsement became part of the policy); *see also Prestige Cas. Co. v. Mich. Mut. Ins. Co.*, 99 F.3d 1340, 1348 n.6 (6th Cir. 1996) (citing *Hagans* for the proposition that "[a]lthough the ICC endorsement in fact is not attached to [the insurer's] policy, [the insurer] acknowledges it is incorporated as a matter of law."); *Travelers Ins. Co. v. Transp. Ins. Co.*, 787 F.2d 1133, 1139 (7th Cir. 1986) (citing *Hagans* for the proposition that the MCS-90

"endorsement may be read into a policy certified to the [federal agency governing interstate commerce] as a matter of law").

This case is distinguishable from *Hagans* for at least two reasons. First, the Court is unconvinced that *Hagans* stands for the proposition that an MCS-90 endorsement should automatically be read into an insurance policy when it is not physically attached to the policy itself. In *Hagans*, the court simply *assumed* that the endorsement was incorporated into the policy because the parties acted as though it was. *See Hagans*, 465 F.2d at 1252; *see also Howard v. Quality Xpress, Inc.*, 128 N.M. 79, 82 (N.M. Ct. App. 1999) (finding that *Hagans* did not stand for the proposition that "the Tenth Circuit will read an ICC endorsement into a policy, even where it is lacking"). In this case, no party suggests that the MCS-90 was intentionally included in the Policy, and Progressive certainly does not concede that the MCS-90 was incorporated into the Policy as a matter of law. *Cf. Prestige Cas. Co.*, 99 F.3d at 1348 n.6. (noting that the insurer acknowledged that the ICC endorsement was incorporated as a matter of law).

This case is also distinguishable from *Hagans* because in that case, the insurer "filed a certificate of insurance with the Interstate Commerce Commission certifying that it had issued [the insured] a policy which was amended by attachment of [the MCS-90 endorsement] in order to be in conformity with the Commission's rules and regulations." *Hagans*, 465 F.2d at 1252. When an insurer

8

affirmatively represents to the federal government that the policy issued to its insured complies with federal law, a reasonable argument can be made that the insurer should be estopped from denying the existence of the endorsement. In this case, however, Plaintiff has directed the Court to no evidence in the record indicating that Progressive ever certified the policy to the federal government.[2] Because the circumstances of this case are materially different from those presented in cases such as *Hagans*, those cases are inapposite.

Although Plaintiff urges the Court to follow the approach taken in *Hagans*, this case is more similar to those cases in which courts have refused to incorporate the MCS-90 endorsement into a policy as a matter of law. The Fifth Circuit addressed the issue in a factually-similar case in *Illinois Central Railroad Co. v. Dupont*, 326 F.3d 665 (5th Cir. 2003). In *Dupont*, the Railroad sued a logging company when one of the logging company's drivers collided with the Railroad's train. The logging company driver was hauling logs for the company, but he was driving his own truck when the accident occurred. Although an MCS-90 endorsement was required by law, the insurance policy at issue did not contain one. The Fifth Circuit had

---

[2]Miller testified that sometime after he obtained the Policy, he secured a certificate of insurance from Progressive for the purpose of obtaining apportioned tags for out-of-state travel. (*See* Miller Dep. 149:3-151:9.) However, there is no evidence that Miller ever informed Progressive that he required the certificate of insurance for this purpose. Even if, as Plaintiff alleges, a Progressive agent faxed the certificate directly to the Florida State Department of Highway Safety and Motor Vehicles, the record contains no evidence that Progressive ever certified the Policy to the *federal* government.

9

to decide whether the policy would be deemed to include the federally-mandated endorsement, which would provide coverage for the accident despite the truck not being specifically described in the policy. *Id.* at 666-67; *see also* 49 C.F.R. § 387.15 ill. I (requiring insurer to pay final judgments "regardless of whether or not each motor vehicle is specifically described in the policy").

The court held that "the failure to include the endorsement in the policy cannot give rise to the remedy the Railroad seeks, namely a reformation of the policy deeming the endorsement to be a part of the policy." *Dupont*, 326 F.3d at 668. The court reasoned that the regulations place the burden on the insured, not the insurer, to obtain the necessary insurance coverage, including any necessary endorsements. *Id.* at 669. The court first "question[ed] the fairness of placing a duty on insurance companies to determine whether an insured is a motor carrier for hire, who engages in the interstate shipment of non-exempt goods, using non-exempt vehicles, and is otherwise subject to the Motor Carrier Act and its complex regulations." *Id.* In addition, the court determined that imputing the endorsement into the policy "would create a perverse incentive" for motor carriers, who "would have an incentive not to comply with the regulations and obtain the endorsement and pay the additional premium associated with it, knowing that the courts would deem the

endorsement part of the policy whether or not it was requested by the carrier." *Id.*[3]

Other courts have also found that it is the insured's responsibility to inform the insurer of its need for interstate coverage. These courts reason that "a plain reading of the motor carrier regulations indicates that they place the burden of compliance on the motor carrier not the insurer" and that "insurance companies have no general duty to advise an insured as to the insured's coverage needs." *See, e.g., Brewer v. Maynard*, Civil Action No. 2:02-0048, 2007 WL 2119250, at *2-3 (S.D. W.Va. July 20, 2007). In the absence of evidence showing that the insured informed the insurer of its need for interstate coverage, these courts refuse to engraft the MCS-90 endorsement onto a policy as a matter of law. *See id.* (declining to incorporate MCS-90 into policy where the plaintiff never informed the insurer that she was traveling interstate even when insurance application form indicated that her business operated in multiple states); *Howard*, 128 N.M. at 82 (refusing to incorporate MCS-90 into the policy when "nothing in the

---

[3]The record is clear that at the time the Policy was issued, Miller was *not* engaged in interstate travel. (Miller Dep. 152:4-10.) This fact, too, bolsters the conclusion that the endorsement should not be incorporated into the Policy as a matter of law, as it undermines the inference that the parties contemplated interstate coverage when they entered into the contractual agreement. *See, e.g., Howard*, 128 N.M. at 82 (noting that the insured's need for interstate coverage is material to the issuance of a policy because of the insurer's need to comply with regulatory requirements on behalf of the insured and because interstate coverage would likely affect the amount of premium charged by the insurer).

11

record indicates that . . . [the] insurer had any basis to believe that the insurance contract needed to" comply with federal regulations); *Thompson v. Eroglu*, No. 05 MA 40, 2006 WL 3849286, at *7 (Ohio Ct. App. Dec. 29, 2006) (finding in favor of insurer who "was unaware of [the insured's] interstate hauling" and observing that "the fact that [the insured] transported waste in interstate commerce and should have been subject to the federal regulations does not mean that he actually complied with the applicable federal regulations").

In this case, the essence of Plaintiff's argument is that because Progressive knew or should have known that Miller required interstate coverage, the burden of ensuring compliance with the federal regulations should be shifted to Progressive. The Court finds Plaintiff's argument unavailing. The only record evidence that could reasonably support the conclusion that Progressive knew or should have known that Miller was driving the tractor-trailer out of state is the 300-mile radius term contained in the Policy.[4]

---

[4] As additional support for his position, Plaintiff points out that (1) Progressive's authorized representative issued a Certificate of Insurance to the State of Florida confirming this 300-mile radius when Miller applied for a U.S. Department of Transportation number and apportioned tag authorizing him to engage in interstate transportation in Florida, Georgia, Alabama, and South Carolina; (2) Miller's premiums were higher before the accident, indicating that Progressive calculated his premiums in an amount commensurate with its knowledge of Miller's interstate travel; and (3) Miller received a speeding ticket on November 5, 2005 in Georgia and Defendants had actual knowledge of this ticket. These contentions are largely unsupported by the record. As previously mentioned, the record does not indicate that Miller informed his agent that he required a certificate of insurance so that he could engage in interstate travel. In addition, Miller was driving a personally-owned vehicle when he received his November 2005 ticket, and the Policy had already lapsed for non-payment at that time. Finally, the record shows

12

Progressive's Rule 30(b)(6) witness, Christine Somrak, could not testify "one way or the other whether [Progressive] knew or should have known that [Miller] was involved in interstate travel." (Somrak Dep. 105:14-19, May 9, 2007.) At most, Somrak agreed that under the terms of his policy, Miller "*could* be involved in interstate travel," and Miller's premiums were "based on him traveling 300 miles" from Keystone Heights, Florida. (*Id.* at 106:3-6, 21-23 (emphasis supplied).) Somrak testified that Progressive must "rel[y] on the representations of its applicants for insurance as to whether they will be operating in interstate or intrastate commerce." (*Id.* at 145:1-5.) In light of the foregoing authorities, the mere possibility that Miller may have traveled out of state at some point after the inception of the Policy is insufficient to warrant the type of burden-shifting that Plaintiff urges.[5] *Cf. Kline v. Gulf Ins. Co.*,

---

that Miller was charged more for the coverage he obtained following the accident. Prior to the accident, Miller was charged $10,741 for a 12-month policy with a $1,000,000 combined single limit of liability. The premium on the subsequent policy, which provided $750,000 of coverage, was $4668 for six months, or $9336 for the year. Miller was thus charged $.0107 for each dollar of coverage under the Policy and $.0124 for each dollar of coverage under the subsequent policy. In other words, every dollar of Miller's premium purchased $93.10 of coverage under the Policy; under the subsequent policy, every dollar of Miller's premium purchased only $80.33 of coverage. In sum, this record evidence cannot support the inference that Progressive knew or should have known that Miller was driving the insured vehicle out of state.

[5]Progressive also contends that it does not issue policies with radii of less than 200 miles. Thus, under Plaintiff's interpretation of the law, Progressive "would be forced to insert an MCS-90 endorsement into every policy it issues to any person who lives closer to the state line than [the policy's] stated radius[,]" and "in some states, an MCS-90 endorsement would be automatic." (Defs.' Reply 2.) This example illustrates the importance of placing the burden on the insured to request the proper level of coverage.

13

98 F. App'x 471, 475 (6th Cir. 2004) (finding that a genuine issue of material fact existed as to whether MCS-90 endorsement was included in policy because, for example, (1) insurance quotes provided to the company contained the endorsement; (2) prior policies contained the endorsement and the new premiums matched those of the prior policies; (3) correspondence between the parties contemplated the inclusion of the endorsement; and (4) copies of the policy provided to the reinsurer contained the endorsement).

Although the Court recognizes that the underlying purpose of the MCS-90 endorsement is to protect injured members of the public such as Plaintiff, the present record contains insufficient evidence to allow a reasonable finder of fact to conclude that Progressive knew or should have known that Miller was driving his tractor-trailer out of state. The Court therefore declines to rewrite the parties' agreement to include the MCS-90 endorsement. For these reasons, Progressive is entitled to summary judgment on Plaintiff's claims.

## II. Request for Leave to File Interlocutory Appeal

Plaintiff requests that the Court certify for immediate appeal the questions articulated in his responses to Progressive's motions for summary judgment, pursuant to 28 U.S.C. § 1292(b).[6] This section requires a party to show that (1) "such order involves a controlling question of law as to which there is substantial ground for difference of opinion" and (2) "that an immediate appeal from the

---

[6]Plaintiff seeks permission to file an interlocutory appeal of today's Order and the Court's previous July 31, 2007 Order that granted summary judgment to Progressive under Florida law.

order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The Eleventh Circuit has determined that interlocutory appeal should be granted

> only on (1) pure questions of law, (2) which are controlling of at least a substantial part of the case, (3) and which are specified by the district court in its order, (4) and about which there are substantial grounds for difference of opinion, (5) and whose resolution may well substantially reduce the amount of litigation necessary on remand.

*McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1264 (11th Cir. 2004). Because it appears that neither the Eleventh Circuit nor the Florida Supreme Court has directly addressed the issues presented in the motions for summary judgment in this case, the Court finds that substantial ground for difference of opinion may exist as to the controlling legal issues that formed the basis of the Court's summary judgment rulings. In addition, because resolution of these issues will determine who may be financially liable and what financial resources may be available to remedy the damages suffered by Plaintiff, the Court finds that the resolution on appeal of the issues presented in the summary judgment motion decided by the Court today and the Court's July 31, 2007 ruling may substantially reduce the amount of litigation necessary on remand. Accordingly, the Court grants Plaintiff's request for leave to file interlocutory appeal.

15

CONCLUSION

For the reasons stated herein, Progressive's Motion for Final Summary Judgment (Doc. 41) is granted. In addition, Plaintiff's request for leave to file interlocutory appeal is granted.

IT IS SO ORDERED, this 5th day of June, 2008.

S/Clay D. Land<br>
CLAY D. LAND<br>
UNITED STATES DISTRICT JUDGE